INSURANCE CO. OF NORTH AMERICA *et al.* v. DELAWARE MUT. INS. CO. *et al.*

(*Circuit Court, W. D. Tennessee, W. D.*   March 3, 1892.)

1. REMOVAL OF CAUSES—SEPARABLE CONTROVERSY—INSURANCE.

Where a bill was filed by three marine insurance companies, corporations of Pennsylvania, New York, and Rhode Island, respectively, in their own and in behalf of other marine insurance companies having like interests, against receivers of a transportation line, who are citizens of New York, the corporation being one of Illinois, a compress company, being a Tennessee corporation, and certain citizens of Tennessee, its trustees, against certain other marine insurance companies of Pennsylvania, New York, and the kingdom of Great Britain, and against 44 fire insurance companies, being corporations, respectively, of West Virginia, Pennsylvania, New York, Illinois, Louisiana, Wisconsin, Alabama, Connecticut, Ohio, Texas, Minnesota, Mississippi, South Dakota, and the kingdom of Great Britain; and the object of the bill was to establish a liability against the receivers, as carriers, upon divers bills of lading issued by them upon sundry lots of cotton deposited by them in the shed of the compress company while awaiting compression, amounting in the aggregate to about 5,000 bales, being part of the whole 14,000 bales destroyed by fire in the shed, for the value of the cotton covered by their bills of lading, for its non-delivery at the point of destination according to the contracts of carriage; and to apply in payment of that liability so established in favor of the owners of the cotton a share of the $301,750 of insurance upon the 14,000 bales, issued by the defendant fire companies to the compress company, which had a contract with the receivers to keep the cotton fully insured for their benefit; also to hold the compress company liable for certain breaches of contract, and of trust arising out of it, by not insuring in solvent companies, by not collecting such insurance as was available, and by not taking out full insurance; and to apply the sum so realized from the compress company to the payment of the liability of the receivers, as carriers, to the owners of the cotton; and, lastly, that the plaintiffs, and other marine insurance companies who had paid to the owners on policies held by them the losses by fire on this cotton, should be subrogated to the claims of the owners against the receivers, as carriers, and that, generally, the fire insurance fund in the hands of the carriers or compress company or of the fire companies, unpaid, be applied in exoneration of their losses so paid as aforesaid: *Held*, upon the petition for removal of one of the Connecticut fire insurance companies, two of the

---

[1] Not reported.

New York fire insurance companies; the Louisiana fire insurance company, and two of the English fire insurance companies, that, whether aliens could remove or not, the others could, and the case was removed as one having, as to each of the fire companies, a separable controversy between citizens of different states, and thereby determinable between them, the parties being properly arranged on the record, as they might be by the court, to show the jurisdictional diversity of citizenship and corporation domicile.

2. SAME—JURISDICTION.

The test of the federal jurisdiction by removal, where the parties are numerous, and the suit complicated with many demands at law and in equity, as where the bill is to enforce trusts arising out of losses by fire between insurance companies, the owners of cotton burned, and the carriers and its agents, is whether or not the plaintiffs are proceeding upon a right that is joint in themselves or severable as to each, or whether or not the liability of the defendants is joint between them or severable as to each. If joint in either of these respects, or if there be a joint and severable right or liability, and the plaintiffs choose to sue upon the joint right or the joint liability, there may be no removal; but if there be neither joint right in the plaintiffs, nor joint liability in the defendants, no matter how complicated the demands as to each, respectively, the mere union of several rights or liabilities into one suit for convenience cannot defeat the federal jurisdiction by removal, if, besides this separable quality of controversy sought to be removed, it cannot be fully determined without the presence of other parties, whose citizenship might otherwise defeat the jurisdiction.

3. SAME—ARRANGING PARTIES.

The court cannot search the record for a mere ideal controversy that might have been made by the plaintiffs, which is separable and wholly determinable as between citizens or corporations of different states, and arrange the parties as if that controversy had been made, but must find a real controversy, actually made by the pleadings, and may then arrange and adjust the parties without regard to their present attitude on the record, if it have the separable quality, and may be wholly determined between citizens or corporations of different states.

4. SAME—ALIENS—ACT 1887.

Whether an alien defendant, actually interested in a controversy between citizens of different states, which is separable and removable, may remove the suit under the peculiar structure of the act of 1887, quære.

In Equity.    Motion to remand.

Taylor & Carroll, Holmes Cummins, and Lewis Y. Farmer, for plaintiffs.
Metcalf & Walker, Turley & Wright, and H. C. Warriner, for defendants.

HAMMOND, District Judge.    On the 17th day of November, 1887, 14,000 bales of cotton were burned while awaiting compression, for convenience of carriage, in the sheds of the Merchants' Cotton-Press & Storage Company at Memphis.    This cotton had been sent there by numerous shippers of it, under the usages of the business, upon dray tickets and receipts of the compress company, expressing on their face the fact that the cotton was insured by that company.    Upon these tickets and receipts the numerous shippers in small lots had procured from the various carriers and transportation lines doing business from Memphis bills of lading, consigning the purchases to owners at the points of destination, which consignees had paid for the cotton upon the drafts of the consignors, with the bills of lading attached.    The consignees, with few exceptions, held open policies of insurance in what has been called throughout the litigation "marine" companies of insurance.    These were companies issuing a form of policy ordinarily used in marine insurance to cover goods afloat or about to be transferred by water, but applied in these interior shipments to merchandise in transit by rail, or partly by rail and partly by water.    The policies usually begin the risk

at the moment of delivery to the consignee or purchaser, or to his carrier, and end it at the moment of arrival at its destination, and contain differing stipulations as to the adjustment of a loss in its relation to other additional or double insurance; and they open and close upon each and every shipment as it arises.    The consignees of all this cotton now in controversy held marine insurance of this character upon which the risk had attached.    Another peculiarity of this and all fire insurance of cotton is that the policies are valued at an agreed price per bale, generally, and in this case at $50 per bale, or invoice cost and 10 per cent., to save all question of weight, quality, or value elements of any kind.    The marine companies more or less promptly paid or adjusted their losses, either under stipulations in the policies or outside of them, with a reservation of one kind or another that the payment should not prevent any claim they might have over against the carrier, through subrogation to the rights of the owner.

To build up a monopoly of the business of compressing cotton bales by the costly methods that must be used, this compress company had made long-time contracts with the carriers doing business out of Memphis that it should do all the compressing, the carrier securing the bales in the form of light pressing in use upon the plantations.    These contracts were in writing, and, among others, contained a stipulation that the compress company would, at its own expense, keep all cotton fully insured, in good and solvent companies, for the benefit of the railroads, transportation lines, and owners.    At the time of this fire the compress company held about 52 policies of common fire insurance in the ordinary form, with ordinary stipulations as to other additional or double insurance, amounting to $301,750, something less than half of the total loss.    The policies each covered all the cotton in the shed.    They were issued by 44 companies, belonging to 13 states and 1 foreign kingdom, as follows:   7 to Wisconsin, 6 to Illinois, 5 each to West Virginia, Iowa, and Louisiana; 2 each to Alabama and Connecticut, and 1 each to Ohio, Texas, Indiana, Minnesota, Mississippi, and South Dakota, and 6 to England.

Among the contracts of the compress company with the carriers was one with the Cairo, Vincennes & Chicago Line, known as the "C., V. & C. Line," for its traffic name.    This was the Cairo Division of the Wabash system, a consolidated corporation of Illinois and adjacent states.    This division was in the hands of receivers, Tracy and Thomas, citizens of New York.    These receivers kept an agent at Memphis, soliciting cotton shipments east, upon which they issued bills of lading in the usual form, containing certain stipulations as to fire losses, the legal effect of which is the pivotal point of this litigation.    These bills of lading covered the entire distance from Memphis, but the C., V. & C. Line depended on special contracts made by itself, from time to time, as the occasion required, for transportation to Cairo, its initial terminus, generally by the Mississippi river, but sometimes by rail also.    This line had in this fire an aggregate of about 5,087 bales of cotton, for which it had issued bills of lading, in different lots, to various consignors.    The

marine companies have paid the several consignees, in one form or another, and the plaintiffs and other marine companies and their assignees are parties to this record.

Soon after the fire, litigation arose, and the bill of one of the consignees and owners went to the supreme court of Tennessee, and the case is reported as *Lancaster Mills* v. *Merchants' Cotton-Press & Storage Co.*, 89 Tenn. 1; 14 S. W. Rep. 317. Another case also went to that court, and is known as the case of *Deming* v. *Merchants' Cotton-Press & Storage Co.*, 17 S. W. Rep. 89, 90 Tenn. 306. These cases, more in detail, state the facts herein noted, and show the legal questions involved in the litigation, and it is assumed that they will be taken, as this bill assumes, as showing the scope of this case in all its bearings. But the C., V. & C. Line were not parties to that litigation in fact, though named in the record, because there was no service or appearance to bind them; and, because of the absence from the record of the C., V. & C. Line and its receivers, the *Deming Case* was, by the state supreme court, dismissed without prejudice, so far as concerned the cotton covered by the bills of lading of that line. Hence this bill was filed in the chancery court of Shelby county by three of the marine companies—the Insurance Company of North America, a Pennsylvania corporation; the Atlantic Mutual Insurance Company, a New York corporation; and the Providence Washington Insurance Company, a corporation of Rhode Island—against the other marine insurance companies, or their assignees, corporations or citizens of Pennsylvania, New York, Rhode Island, and the kingdom of Great Britain, against the C., V. & C. Line and its receivers, citizens of New York, against the compress company, a Tennessee corporation, and three citizens of Tennessee, its trustees in a deed of trust given after the fire on certain real estate to secure the beneficiaries therein named, which need be no further mentioned, and against the 44 fire insurance companies whose corporation domiciles have been already stated, home and foreign. The bill prays for general relief, and especially that a liability may be declared against the C., V. & C. Line receivers upon their bills of lading, as if in favor of the owners who were holders thereof, respectively, and that on that right a judgment be had against these receivers; that this liability may be satisfied by the fire insurance fund collected, or that ought to have been collected, by the compress company, and by a decree for any deficit or breach of trust by the compress company under its contract, and recovery of judgments therefor against the fire companies, and against the compress company; that the marine insurance companies paying losses on their respective policies may be subrogated to these rights and remedies; and that they may be enforced as a trust in their favor. The Continental Insurance Company of New York, the Fire Association of New York, the National Fire Insurance Company of Connecticut, the Home Insurance Company of Louisiana, and the Royal Insurance Company and the London, Liverpool & Globe Insurance Company of the kingdom of Great Britain filed a petition to remove the cause to this court, and the cause is now heard upon the plaintiffs' motion to remand for want of jurisdiction.

The fundamental controversy in this case undoubtedly is that of the marine insurance companies, claiming exoneration from their losses by fire upon the cotton burned by subrogation to the right of the owners to damages from the C., V. & C. Line for a breach of its contract by bill of lading to deliver the cotton safely at its destination to its consignees. But this is obviously not a joint liability to the marine companies *en bloc*, or to the owners *en bloc*, but a separate and distinct claim upon each and every lot of cotton, covered by a separate bill of lading to each and every owner or consignee, according to the facts as they appear in that behalf; any owner or consignee holding more than one bill of lading having the right, possibly, to combine them into one suit brought to enforce the stipulations of the bills of lading. So, too, possibly, if any one marine insurance company should have paid more than one holder of a bill of lading the several losses incurred by the fire under its policies severally issued to such owners, it might in a court of equity, if by any means such a court may acquire the jurisdiction to enforce an action to of damages for the breach of the bills of lading, so purely legal in its nature, combine all its several claims, although so diversely arising, into one claim against the carrier. But otherwise than this no joinder in pleading of several marine companies as plaintiffs in the bill in equity, or in the suit at law, could create a joint cause of action, inseparable, in the sense of the removal acts of congress, by the plaintiffs joined against the carrier; and, notwithstanding such joinder, they would remain the separate and distinct action or complaint of each and every marine company, plaintiff, against the carrier, the C., V. & C. Line or its receivers in this case.

Next in the upbuilding of this lawsuit stands the controversy—scarcely, if at all, less fundamental than that just mentioned—arising out of the claim of the marine insurance companies that the fire insurance companies, 44 in number, having policies on the burned cotton aggregating $301,750, shall pay so much of the sum, already estimated in previous litigation to be $210,224.37, as pertains to the bills of lading issued by the C., V. & C. Line, to them, in discharge of their aforesaid claim for damages against the C., V. & C. Line upon its aforesaid bills of lading, thereby indemnifying the aforesaid carrier against such damages, which it is averred are covered by the policies of the fire companies, and thus enforcing the claim of the marine insurance companies for exoneration by subrogation to the rights of the owners as against the carrier.

Next in the orderly construction of the suit, but not in importance, is the claim that the compress company, having collected certain parts of the insurance held by it, has misappropriated to other losers $4,394.12 of these collections, which should have gone to the C., V. & C. Line on account of cotton covered by its bills of lading. This is charged as a breach of trust.

Next, the bill claims that there has been another breach of trust in failing to perform its duty by the compress company to collect the fire policies held by it, and this is set up as a cause of action against the com-

press company; next, a breach of its contract with the C., V. & C. Line to keep fully insured is set out, and this is claimed as a liability against the compress company; also the cross-bills, or some of them, claim there has been a breach of contract in taking out insurance in companies that are "not good and solvent companies," but are insolvent, and this is set up as a claim against the compress company. It is a claim covered, probably, by that charging it with not taking out full insurance, and the two are quite the same. Also there is a prayer to foreclose a deed of trust by the compress company on real estate to secure certain beneficiaries, not necessary to be considered here.

This is an analysis of the suit sufficient for the determination of the motion to remand for want of jurisdiction. Now, it is obvious, as before, that the liability of the fire insurance companies, however it arises, or however it is to be enforced, whether at law or in equity, whether directly or indirectly, through other agencies in favor of the marine insurance companies, is not a joint one, to be enforced against the fire companies *en bloc;* and no pleading, however complicated, can deprive these controversies against each and every fire company, by each and every marine company, of their separate existence, in the sense of our removal acts of congress. It is a mere matter of mathematical calculation, upon the proof, either at law or in equity, however expensive or costly such a controversy might become when enforced by separate suits at law or in equity, to ascertain what each fire company may owe to each marine company upon the policies held by it, or to which it may be entitled by any equitable right of substitution, subrogation, exoneration, or what not. The mere factitious circumstances that there were some 14,000 bales of cotton covered by some 52 policies of fire insurance, in some 44 different companies, belonging to some 13 of our states and 1 foreign kingdom, burned in one shed, or that this fire insurance was procured by one agent in pursuance of a contract to so procure it, or that that contract was made with one carrier, through whose contract right the marine companies all held their alleged equity of subrogation, do not at all affect the separable character or quality of these controversies from each other; nor does the fact that there are some dozen or more marine companies claiming this quality of subrogation, and consequent exoneration, through one carrier, and that carrier's one agent for procuring the fire insurance, make the claims of the marine companies a joint one in any sense; certainly not in the sense of our removal acts of congress, either against the fire companies, that one carrier, or that one agent. This question of joint and separable controversy never depends upon such similarity of action, no matter how complete the similarity, but always upon the quality of being joint or identical in estate or interest, or a common and joint source of the title for the same, as arising out of a joint contract or the like. It is altogether true that if the obligation sued for be joint and several, and the plaintiffs sue jointly, either in the unity of their own interest joining themselves on the record, or in the unity of the defendant's liability joining them on the record, the defendants, the cases have settled, may not lay hold of the

alternative quality or separability, and, by filing separate defenses or otherwise taking advantage of it, remove the case because of that separability. But where there is no joint cause of action, no unity of interests or title, except that which comes of mere similarity, however complete, and no right of joinder, except that which is arbitrary in the sense that the plaintiffs may unite themselves together for convenience, or to save to themselves costs and expenses, and may unite the defendants for the same reason to avoid a multiplicity of suits, then, on the other hand, no such joinder as that, however made, can defeat the removable character of the suit, which inheres always in that separable quality, whenever the controversy is wholly, in that sense, and not in the sense of the artificial construction of the record, between citizens of different states, and may be fully determined between them. Under the act of 1866, this separable controversy might be carved out and removed, leaving the other parties in the state court; but under later acts it is not carved out, but serves as a vehicle, so to say, to convey the whole suit, however artificially constructed or framed by the parties plaintiff, to the federal court; and although there may be in the suit some controversy between citizens of the same state, if the plaintiffs have chosen to put it in the same suit along with the other it must go in the same vehicle to that court; not against their will, indeed, because they are presumed to have known, under the law, that by this artificial and voluntary uniting, for their convenience, or to save to themselves expenses, those separable controversies which they might have kept separate, if they had chosen to protect their choice of jurisdictions, that their choice might be defeated at the will of those whom they had so joined, who might choose another jurisdiction.

To illustrate the position here taken, let us consider this case in its relation to the defendant the National Fire Insurance Company of Connecticut, one of the petitioners for removal. It has a policy, No. 1,328, for $5,000, covering this loss, in general terms, "on all cotton in bales received by them as agents for the benefit of railroads, transportation line, or owners in boundaries of the Merchants' Cotton-Press & Storage Company." That is to say, the whole 14,000 bales burned were covered. Fortunately for all concerned, the mode of doing business was to fix the value of the cotton at so much per bale, inferentially, from the proof contained in the exhibits and bill, at $50 per bale, or invoice cost and 10 per cent., and this was an insurance of 100 bales of the 14,000. Now, if there had been designated a specific lot of 100 bales, surely the controversy over it would have been none the less separable than it is, albeit there are more "railroads, transportation lines, and owners" than one interested in this $5,000, each exactly equal, according to his *pro rata* of the whole number of bales. Indeed, the exact share of the C., V. & C. Line in the $301,750 of fire insurance has been already ascertained in other suits to which it was not a party,—and which it seems, by the way, got along very well without it, and perhaps without some of the fire companies here named as defendants not being before the court,—to have been $85\frac{1}{2}$ per cent. of the value of the cotton covered by its bills

of lading, and which, upon the theory of this bill, is averred to belong equitably to marine companies issuing policies which have been paid by them, each according to his *pro rata* share thereof, easily ascertained by mathematical calculation. Now, if the Connecticut corporation had not appeared in this suit, and had not been by process of any kind, either direct or substituted process of attachment and publication, suable at all in Tennessee in any court, state or federal, can it be doubted but that the compress company, to which the policy of insurance is payable as the assured, could bring a plain action of *assumpsit*, or other appropriate form at law, in Connecticut, against that corporation alone, and collect either the whole unpaid balance of the policy as belonging, on the theory of the bill, to the C., V. & C. Line, as indemnity against its liability on its bills of lading, or, if not belonging to it, to be held in trust for whom it might concern? The compress company belongs to Tennessee, and the insurance company to Connecticut, and we have the requisite diversity of corporation domicile, it is true, and it is argued that this gives us jurisdiction. But I do not think our jurisdiction can be placed on that ground. It is urged that the position of the parties on the record is immaterial, and that the court will arrange them on either side according to the nature and character of the controversy. But this always has reference to the controversies made by the pleadings, and does not authorize the interjection of a suit not made by the pleadings, nor authorize the court to construct pleadings that do not exist for such interjected suit. The controversy must be in the shape of a suit, and not a bare abstract idea, which might take the form of a suit, if the parties were so minded. They must have the mind to make that controversy, and must have done it. Here the plaintiffs have not made it. They do not sue in the name of the compress company for their use, nor ask to, but sue in their own name and right, and upon their own ground, not upon that of the compress company. On the contrary, one of the very best bases of their equitable right is that the compress company has neglected to do that thing; that it has deserted its trust in that behalf; and that they must take care of themselves in respect of the liability of the fire companies, and they proceed to do it by this bill. Now, it would be a perversion of this record as a pleading, and a distortion, to wrest the compress company from beside the fire companies, with whom the plaintiffs have associated it on the defendants' side, as a co-conspirator, upon an allegation of a conspiracy against the plaintiffs, and to put it on the plaintiffs' side as a party suing the fire companies for the benefit of whom it may concern, as parties on the record, plaintiffs and defendants. We are not authorized to do this in the process of arranging parties, but, however we arrange them, they must fit the pleadings, if not technically, at least in substance, and there must be some sort of conformity to the frame-work of the suit, as the plaintiffs have made it, and their law-suit must be conducted, and not an entirely different one. If the compress company had filed a cross-bill against its co-defendants, and sued them for the use of the parties interested, plaintiffs and defendants, as it might have done, then it is possible that in behalf of this Connecticut

corporation, on a petition for removal, we might have looked at the bill and cross-bill as one suit, so far as the Connecticut corporation was concerned, and might have sustained the jurisdiction on the ground of diversity of domicile in their respective states, being a controversy wholly between them, and fully determinable between themselves, but not upon this record.

Returning now, however, to the supposition of a necessity for going to Connecticut, for want of process here, can there be any doubt that the C., V. & C. Line or its receivers could sue the Connecticut corporation for its per centum of the $5,000 due upon its policy, without the presence of the other parties, assuming and admitting its own liability upon its bills of lading to the owners of the cotton for damages for not delivering it? Possibly it might bring this suit at law in its own name upon the now well-settled principle that a third party may so sue upon a contract made by others for its benefit. Certainly it could sue at law in the name of the compress company for its use; or failing in that, upon the very allegations of this bill of a desertion of its trust by that company, a conspiracy, and a refusal to sue or otherwise collect the amount, the C., V. & C. Line, or its receivers, could go into equity, admit its liability on the bills of lading, and recover. That is precisely what has been done by the pleadings in this case, taking the cross-bill of the C., V. & C. Line and its receivers, as one may do, along with the original bill. I mean that cross-bill filed by them on the same date, and by the same solicitors, as the original bill, and not the cross-bill filed by them by another solicitor at a later date, and after the petition for removal was filed, to which we cannot look, however, because it is well settled that this question must be settled according to the situation and conditions existing at the time of filing the petition for removal. Taking the original bill and the cross-bill then on the record together, and arranging the parties as we may, and doing this with perfect technical conformity to the two pleadings, and we have the plaintiffs Pennsylvania, New York, and Rhode Island corporations, and along-side them we place the C., V. & C. Line, an Illinois corporation, if all sue that way, and disregard the fact, subsequently developed by an amended bill and cross-bill filed after the removal petition, that there is no such corporation, that supposition of the pleadings being a mistake, and the receivers, Thomas and Tracy, citizens of New York. So, on the plaintiffs' side we place all the other marine companies in whose behalf the bill is, in terms, filed by the plaintiffs, although some of them have been placed on this record upon the defendants' side thereof. That this arrangement does no violence to, but is in conformity to, the pleadings, is manifest. The marine companies all have similar—not joint, however, in any sense, as we ruled in the outset—interests and rights as against this Connecticut fire company; the receivers or their line have the same, admitting their own liability, as they do, by the cross-bill; and referring to the amended bill and cross-bill filed September 22, 1891, after the removal petition, for the mere purpose of arrangement, we find that technically these receivers are so associated as plaintiffs, the original and cross bills being

taken together as one suit, as we may, and in substance they are plaintiffs, as against this Connecticut defendant, seeking to remove. Now, then, we have as defendants on the other side the Connecticut corporation alone, or associated with other fire companies, as you please, but with none of them has it any joint liability in any sense whatever. If the compress company be either a necessary or indispensable party, it is on the record associated with its co-conspirators, according to the allegation of the bill and cross-bill. And so we have, the parties being thus arranged to this separate and distinct controversy with the Connecticut corporation, the requisite of diversity of citizenship and corporation domicile. Another feature of this record may be noticed argumentatively to show how separable each fire company is from the rest, and that is the plaintiffs seek by their amended bill to dismiss as to all of them alleged to be insolvent, including this Connecticut company. Here, then, we have all the essential elements for our jurisdiction.

It matters not that in this bill and cross-bill there are other controversies; that, for instance, between the marine companies by substitution to rights of owners and consignees, all left out, by the way, as parties, although the bills of lading were in their names, and they are technically parties to the carriage contract, as against the C., V. & C. Line or its receivers, as to whether the carrier is liable for non-delivery of that cotton, or is exempt from such liability by stipulations in the bill of lading against fire losses. This Connecticut company has no connection or concern in that controversy by reason of any joint liability; not the least. It may be interested in defeating the claim, for then, possibly, the C., V. & C. Line would have no claim against it, or only one to the extent of loss of freights; but that interest is purely incidental, and does not, in the sense of our removal acts, inseparably connect them as parties to this suit in its relation to that controversy; nor, for another instance, is this Connecticut Fire Company in such an inseparable sense connected with the controversy in this bill and cross-bill between the C., V. & C. Line receivers and the marine companies, one or both, suing jointly or separately, against the compress company for any breach of its trust under its contract to keep the cotton fully insured; nor that concerning the alleged misappropriation of insurance funds collected, as to which, if it had paid any part of that collection, its only interest is to see that such part is duly credited when judgment comes to be entered against it; nor that concerning the alleged neglect to collect of the fire companies, as to which it had no interest whatever except to profit by the neglect, if it may not yet be compelled to pay; nor yet again with that concerning the alleged neglect to keep fully insured all the cotton covered by the C., V. & C. Line's bills of lading; nor still again with that concerning the foreclosure of the deed of trust upon real estate. None of these concern the liability of the Connecticut company.

If we look to the C., V. & C. Line receivers' cross-bill, filed since the petition for removal, in which it vigorously denies its liability as carrier, and claims that the loss was exempt under the stipulations of its bills of lading, and does not admit the liability, as formerly it did in the other

cross-bill, still there is no joint interest or liability of the Connecticut fire company, but only that incidental interest and possible profit to it by a decision in favor of the carrier on that question which has been hereinbefore referred to, but which in no sense defeats our jurisdiction over its separable controversy.

But apart from all this, there is still another, and to my mind more conclusive, ground for our jurisdiction. The joining together of the Insurance Company of North America, a Pennsylvania corporation, the Atlantic Mutual Insurance Company, a New York corporation, and the Providence Washington Insurance Company, a Rhode Island corporation, three only of the marine companies, as plaintiffs, is entirely artificial and arbitrary. Nothing in the record, or in the nature of the litigation as disclosed by the record, unites them any more than it unites all the other marine companies, some five or six or more of which are made defendants. We have shown that there was no joint right in them, and the splitting made by the pleading shows that they might occupy either side of a bill filed by either one of them, which is also apparent from the very nature of the case. Indeed, any one of these "marine" companies might have filed this bill solely or in behalf of all the others, as these three plaintiffs have done; and if so filed, unless there was some special reason, the others perhaps need not become full parties at all, but in the end, when the accounting should come, would be admitted by petition, or without even that formality, in modern practice, to file and prove their respective claims, and receive their respective shares; or, if need be, by petition to become full parties defendant, and by just such cross-bills as the defendants the Delaware Mutual Company, Deming & Co., and the receivers, Thomas and Tracy, have filed, set up any special claims they might have, and frame any special litigation they might wish. Now, it is plainly to be seen that if the leading plaintiff, the Insurance Company of North America, a Pennsylvania corporation, had alone filed such a bill, there would have been no difficulty about the federal jurisdiction by removal, upon the petition of this Connecticut corporation in this case, provided, of course, that we are right here in holding that there is no joint liability of the defendants, and no joint right of action in the plaintiffs, and the separable character of the controversy with it would be easily apparent. It would be none the less "a representative" suit, as urged by counsel, then than now; and that arrangement is, in my judgment, the most rational and technical that could have been adopted. Adopting it now, and arranging the parties in that way, as we may, our jurisdiction is complete, upon the theory of this opinion as to the nature of the controversy. Certainly the pleader cannot, by the association he has selected to display a Pennsylvania, a New York, and a Rhode Island party, on either side the record, obscure or defeat our jurisdiction, especially when those defendants he has put upon that side are contemporaneously, by their cross-bills, seeking the same relief the other plaintiffs seek, as against this Connecticut corporation. Neither are these fire companies, defendants, in any sense garnishees, and therefore nominal parties, without the

right of removal. The suggestion that they are, supports the position of the separable character of their respective controversies. But, wholly aside from that, there is no judgment upon which they may be garnishees in execution, either against the compress company or the C., V. & C. Line receivers. The compress company is charged with no fraudulent conveyance, or attempted fraud upon creditors, entitling plaintiffs to an attachment against it, upon which process these fire companies are garnishees. Neither are the C., V. & C. Line receivers attached for fraud, or because they are non-residents under the Tennessee attachment laws, upon which process the fire companies are garnishees. The attachments sued out against the fire companies are for the purpose of bringing them into court by substituted process, and not upon garnishments, as above explained. If there be any meaning for the term "equitable garnishees," other than the garnishees are in a court of equity, rather than a court of law, and the plaintiff's right or record is equitable rather than legal, I do not quite comprehend it. But certainly nothing can be implied from the term, in its relation to this right of removal, other than that, to be nominal parties, *qua* garnishees, they must be mere debtors, naked of all possible interest except to pay the money, which surely these fire companies are not, with the stipulations in their policies relating to contribution, where there is double insurance, and the like. Moreover, it is my own opinion that possibly in its very last analysis this hydra-headed lawsuit, with its many purely legal actions, like that upon the bills of lading, that upon the policies of insurance, that upon the contract of the compress company with the receivers of the C., V. & C. Line, for the many breaches thereof assigned, may depend for the rock of safe foundation in a court of equity, upon the principle that these fire insurance companies, defendants, shall be treated as trustees of the funds they respectively owe for the benefit of the marine companies, by implication of law. The fact that they are at the same time debtors would make them none the less trustees, as is often held in a court of equity, working out its beneficent design of ascertaining the rights of parties, and enforcing them through the process of declaring duties and trusts. All along in this record, and in argument on both sides, the compress company is treated as a trustee of the insurance fund, speaking largely. But the part it has actually collected is insignificant comparitively, and of that it might be directly a trustee for whom it may concern. But how as to the part it has not collected? If it be trustee as to that part, how does it become so? The bill seeks to hold it in damages for not collecting; for a breach of trust in that behalf; for damages for not taking out insurance "in good and solvent companies;" for a breach of a contract in that behalf; for damages for not insuring fully, but only partially,—a breach of contract in that behalf. If all these damages be aggregated, and judgment taken against the compress company for the amount, then, as to this debt by the compress company, it is held to be a trustee only by implication of law. So these fire companies, by like process of implication, are trustees of that which they owe, and must be, possibly, to make them amenable in a court of equity. Indeed,

suppose the compress company had committed no breach of trust, and, having full insurance by policies "in good and solvent companies," had turned them over to the marine companies or to the owners, or to the carrier, or to whomsoever they belonged, or could derive any interest in them, and had said that these interested parties must bring their own suits, using their name, if need be indemnifying them against costs. What answer could have been then made to the claim that it had no other duty in the premises? If, then, the C., V. & C. Line receivers were insolvent, *qua* receivers, and the compress company were insolvent also, would these fire companies be taken by plaintiffs to be nominal parties, and only garnishees? Surely not, and they are none the more garnishees now. They would be called trustees of that which they respectively owe, for whom it may concern, as the compress now is called. The right of subrogation or substitution, and the consequent right of exoneration and indemnity, existing between the marine companies, the owners of the lots of cotton and the carrier, and between all these parties and the compress company, might support the equitable jurisdiction of the bill, and so might the right of contribution among the insurance companies of both complexions, and all *inter sese;* but, in the end, these equities would all have to be worked out through the doctrine of a trust attaching to the actual money to be paid, in whose hands soever it may be at the filing of the bill, as the debtor owing the duty of applying the money to whomsoever it may belong. It is useless to speak of such parties as garnishees.

It is also urged that the Newport News & Mississippi Valley Company, a corporation of Connecticut, doing a railroading business in Tennessee, is a party, and therefore we have no jurisdiction. This company was not a party to the original bill at all. It was made so by an amendment filed after the petition for removal, but we need not consider that. It was made a defendant to the cross-bills of the C., V. & C. Line receivers, and of Deming & Co., filed contemporaneously with the original bill. But technically new parties cannot be brought in by a cross-bill which is confined to the parties to the original bill, strictly to the plaintiffs only, perhaps, but, by enlargement of practice, co-defendants may be made parties to a cross-bill also. So that in fact, as we must look at the record, the Newport News & Mississippi Valley Company is not a party. But waiving that, it is well settled that a controversy between co-defendants, belonging to the same state, does not defeat such a jurisdiction as we have by the arrangement of parties last suggested. This is all that need be said on this point, but, looking to the character of the claim against this company, it appears that it issued no bill of lading, and had no contract right with any of the owners of this cotton here involved. As to 948 bales of the cotton, it is alleged that, after the C., V. & C. Line receivers had issued their bills of lading, there was an agreement between them and the Newport News & Mississippi Valley Company that this last company should take the cotton to Cairo. That was their affair, and, while it may complicate this lawsuit by adding another perplexity to it, it does not make the Newport News & Mississippi Valley Company an indispensable party.

But take either that company or the C., V. & C. Line as the carrier to be charged, and if it is meant that there must be a judgment against such carrier as a preliminary foundation for the equities of subrogation and exoneration in favor of the marine companies, if that is what is meant by the argument and by the decision of the supreme court of Tennessee, then, there being no such judgment averred in this bill, the whole structure would fail; but, if it be meant only that a state of facts must be shown which would entitle the carrier liable to invoke the equities, that showing could be made contemporaneously by this bill, as it is attempted to be done by it, and the carrier is not an indispensable party, except to hold him liable and collect the money from him, and the fire company has no concern with that. But if he be, in the suit as we have arranged, the carrier and the fire company are both defendants along with each other, and there is no adversity of record in the matter of citizenship and corporation domicile. Moreover, if this judgment against the carrier be necessary, it must be in favor of the owner, who is a party of the second part to the bill of lading. It is his contract, and he must sue on it. He is not in this record, and has been dispensed with by the plaintiffs in behalf of the marine insurance companies; and why may not the carrier—the other party to the bill of lading—be dispensed with in behalf of the marine companies in this showing that must be made to charge the carrier in the controversy between the marine and fire companies? It might be, under some holdings on the subject of the requirement of a preliminary judgment against the carrier, that that controversy which the marine companies have each with each of the fire companies would have to await the process of procuring a judgment at law against the carrier, but that circumstance does not connect them together inseparably in the sense of our removal acts. Nor does the circumstance that the plaintiffs are allowed graciously to pretermit this independent and separate action at law against the carrier, and to proceed without the requisite judgment at law in a bill against all at once, in which, for the plaintiffs' sole advantage, this requisite judgment may be declared contemporaneously with a declaration of the plaintiffs' equities against the fire companies, make the carrier any more indispensable to the controversy with the fire companies than the carrier would be if there were two suits, one at law against the carrier and the other in equity against the fire companies. If this be not so, then the plaintiffs would have an advantage on this subject of removal which it would not have, and could not have, if the two suits were brought, as possibly they ought to be, in strict right, as between law and equity jurisdictions, as we have them in the federal courts, and to which we must look in determining our jurisdiction. In other words, we must treat this case, so far as the fire companies are concerned on their petition for removal, because of a separable controversy, as if the plaintiff had procured a judgment at law against the carrier, and were proceeding against the fire companies to enforce their equities arising out of it. The carrier is not, then, an indispensable party.

We come now to a case arranged with the second of the plaintiff companies, the Atlantic Mutual of New York, as the sole plaintiff. Here

our jurisdiction might be more doubtful, possibly, but the same reasoning of this opinion would sustain it as that of the Connecticut corporation seeking removal. Yet it is not necessary. Having jurisdiction in the suit already arranged, we have it as to this plaintiff, who has joined this suit in a common cause with others where there is a separable controversy; and no matter if separately we could not acquire jurisdiction, yet by that union of its own choosing we have acquired it. This is well settled. The same is true of the Rhode Island plaintiff, but our jurisdiction there would be complete if that plaintiff had proceeded alone.

Now, we come to the New York defendant fire companies, two of them asking for removal. If alone they could not have it, the Connecticut removal has brought them along; but I think their own removal is good as against the leading plaintiff, the Insurance Company of North America, a Pennsylvania corporation, and that is sufficient. As against the plaintiff the Atlantic Mutual of New York, of course we could not have jurisdiction over any controversy with these New York removing defendants, but, united with other controversies of other removing defendants of which we have equity jurisdiction, we have it over these also. The Louisiana corporation asking removal has a complete right. It is said the suit has been dismissed as to it, but there is no such order in the record, and the amended bill asking to dismiss was not filed till after the removal, and it is well settled that no change of parties, after petition filed, can affect the right of removal. As to the alien corporations asking removal, we need not decide, since the others will bring it along; but I wish to reserve my own opinion about the act of 1887 in its relation to aliens seeking to remove a suit in which there is a separable controversy between citizens of different states. The decision of the supreme court of the United States, cited by counsel, was under the act of 1875, and, while Mr. District Judge FOSTER adopts it as to the act of 1887, the language and structure of that act are peculiar, and it says, in so many words, that either one or more of the defendants actually interested in such controversy may remove said suit. *King* v. *Cornell*, 106 U. S. 398, 1 Sup. Ct. Rep. 312; *Woodrum* v. *Clay*, 33 Fed. Rep. 897.

Now, if an alien were actually interested in the controversy, why does not this language entitle him to remove? It has been decided that it does authorize a citizen of the same state in which the suit is brought, otherwise excluded from the benefits of the act, to remove it; and why not any defendant, even an alien? *Stanbrough* v. *Cook*, 38 Fed. Rep. 369. The test is actual interest in the separable controversy. But this we need not and do not decide now, for the reasons stated. It will be observed that we have placed this case within the category of those to which the leading case of *Barney* v. *Latham*, 103 U. S. 205, belongs, and have endeavored to show that it does not belong to the category of *Graves* v. *Corbin*, 132 U. S. 571, 10 Sup. Ct. Rep. 196. And we need cite none other of the numerous decisions. On the distinctions between these two, the right of removal depends. These are the cases typical of the principle upon which all must depend. Mr. District Judge SHIRAS, in *Stanbrough* v. *Cook*, 38 Fed. Rep. 369, has instructively stated the test

rule to be, "if the plaintiff has a cause of action in tort or upon contract against several defendants, which is joint, or, being joint and several, is declared on jointly by the plaintiff, the defendants cannot, by tendering separate issues in their answers, create separable controversies, so as to authorize a removal of the cause." But the plaintiffs here cannot, by joining entirely separate and distinct causes of action, some legal and some equitable, upon each and every bill of lading, upon each and every policy of insurance, and upon the contract of the compress company, severable alike, also, as to themselves, so that each and every marine company has each and every cause of action all to itself upon all these contracts, possessing not one single element of joint right or joint liability among them all, defeat the federal jurisdiction over any one of them, where the conditions of the removal act are complied with in time, and any of the proper defendants make the application. Overrule the motion.

NOTE. I find upon re-examination of the record that the "C., V. & C. Line" is attached as a non-resident under the Tennessee Code, and garnishments were issued on that attachment. But it is still plain that this garnishment of the fire companies was only incidental to the suit as against the C., V. & C. Line, and did not at all affect the fact that the fire companies are made parties on their own account, and are sued in that capacity. The fact that they are also garnishees as to a co-defendant, and occupy this dual relation to the record, does not in any sense change the attitude of the case in this matter of the removability of the suit. If they were discharged as garnishees on their answer to that process that they owed nothing, they would still, on this record, be parties to the suit, and would be compelled to answer such decree for contribution or other relief as might be given against them.